RECORD NUMBER: 12-8107

# United States Court of Appeals
### *for the*
# Fourth Circuit

---

**UNITED STATES OF AMERICA,**

*Appellee,*

*– v. –*

**EARL W. COX,**

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

# OPENING BRIEF OF APPELLANT

**BRADLEY L. HENRY**
**BREEDING, LODATO, & LENIHAN, LLC**
**117 Center Park Drive**
**Suite 201**
**Knoxville, TN 37922**
**T: (865) 670-8535**
**F: (865) 670-8536**
**brad@breedinglaw.com**

*Counsel for Appellant*

CP COUNSEL PRESS • VA – (800) 275-0668

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................ ii

Jurisdictional Statement ................................................................. 1

Statement of the Issues.................................................................. 1

I.  THE DISTRICT JUDGE ERRED IN FINDING THAT MR. COX
    WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING
    FROM SEXUALLY VIOLENT CONDUCT OR CHILD
    MOLESTATION IF RELEASED...................................................... 1, 6

II. THE DISTRICT COURT PLAINLY ERRED IN RELYING ON
    THE FACTUAL ALLEGATIONS CONTAINED IN MR. COX'S
    PRESENTENCE REPORT AND CHARGING DOCUMENTS
    AS TRUE................................................................................... 1, 16

Statement of the Case.................................................................... 1

Statement of Facts ........................................................................ 2

Summary of Argument................................................................... 4

Standard of Review ....................................................................... 5

Argument...................................................................................... 6

Conclusion .................................................................................. 21

Statement in Support of Oral Argument ....................................... 22

Certificate of Compliance

Certificate of Service

# <u>TABLE OF AUTHORITIES</u>

## <u>Case Law</u>

*Alford v. United States*,
    282 U.S. 687 (1931)..............................................................................18

*Crawford v. Washington*,
    541 U.S. 36 (2004) .....................................................................18, 19

*Foucha v. Louisiana*,
    504 U.S. 71 (1992) ............................................................................21

*Kansas v. Crane*,
    534 U.S. 407 (2002) ............................................................................7

*Miller v. Mercy Hospital, Inc.*,
    720 F.2d 356 (4th Cir. 1983) ..........................................................6, 8

*Smith v. Illinois*,
    390 U.S. 129 (1968) .........................................................................18

*Taylor v. Maddox*,
    366 F.3d 992 (9th Cir.2004) ............................................................15

*United States ex rel. Paxos v. Rundle*,
    491 F.2d 447 (3rd Cir. 1972)(en banc) ..............................................6

*United States v. Baker*,
    45 F.3d 837 (4th Cir. 1995) ............................................................17

*United States v. Baptiste*,
    596 F.3d 214, 220 (4th Cir.2010) ......................................................6

*United States v. Caporale*,
    701 F.3d 128 (4th Cir. 2012) ........................................................8, 9

*United States v. Felix*,
    561 F.3d 1036 (9th Cir. 2009) ........................................................18

ii

*United States v. Hall*,
664 F.3d 456, 461 (4th Cir. 2012) ................................. 5, 7, 10, 11, 12

*United States v. Johnson*,
587 F.3d 625 (4th Cir. 2009) ............................................. 19

*United States v. Jordan*,
466 F.2d 99 (4th Cir. 1972) ............................................. 18

*United States v. Wooden*,
693 F.3d 440 (4th Cir. 2012) ................................. 8, 9, 15, 16

## United States Code

18 U.S.C. § 4247(a)(5)-(6) ........................................................ 7

18 U.S.C. § 4248 ........................................................... 1, 6, 8

28 U.S.C. § 1291 ............................................................... 1

28 U.S.C. § 1331 ............................................................... 1

## Rules of Appellate Procedure

Federal Rules of Appellate Procedure 34(a) ................................. 22

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the civil commitment pursuant to 18 U.S.C. § 4248 and 28 U.S.C. § 1331.   The district court ordered Mr. Cox committed on October 17, 2012. (Order, J.A. 557). On December 16, 2012, Mr. Cox timely appealed that order. (Notice of Appeal, J.A. 65-66). This Court has jurisdiction, pursuant to 28 U.S.C. § 1291, over this timely appeal from a final order.

## STATEMENT OF THE ISSUES

I.    **THE DISTRICT JUDGE ERRED IN FINDING THAT MR. COX WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED.**

II.   **THE DISTRICT COURT PLAINLY ERRED IN RELYING ON THE FACTUAL ALLEGATIONS CONTAINED IN MR. COX'S PRESENTENCE REPORT AND CHARGING DOCUMENTS AS TRUE.**

## STATEMENT OF THE CASE

On July 12, 2011, the government certified Mr. Cox as a sexually dangerous person under 18 U.S.C. § 4248. (Certificate, J.A. 13-14).

At the hearing, on September 19, 2012, the parties each presented expert testimony and evidence concerning whether Mr. Cox met the criteria for commitment.

1

On October 17, 2012, the district court committed Mr. Cox. (Order, J.A. 557). On December 16, 2012, Mr. Cox timely appealed. (Notice of Appeal, J.A. 65-66).

## STATEMENT OF FACTS

The parties agree that the government met its burden of proof regarding the first two prongs of the statute; the only material factual dispute at the hearing was whether Mr. Cox would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

Mr. Cox is currently 55 years old. (PSR, J.A., 276). In 1982, he was found guilty at court martial for sodomy and other sexual conduct with a minor and was sentenced to 8 years incarceration. (PSR, J.A. 285). During that time, he completed a sex offender treatment program while in prison at Fort Leavenworth. (Deposition, J.A. 94). This treatment program did not involve coping mechanisms for avoiding online child pornography because such pornography did not exist in 1982. He also engaged in outpatient treatment while on parole. (Deposition, J.A. 107-108). Mr. Cox has not had a hands-on sexual conviction since receiving these treatments.

In 2003, Mr. Cox pleaded guilty to one count of attempted enticement of a minor to travel in interstate commerce and one count of receipt of child pornography in the United States District Court for the District of Colorado and

was sentenced to 120 months incarceration with 3 years supervised release. (PSR, J.A. 278). Mr. Cox has not possessed child pornography since this conviction, and had no disciplinary infractions while in BOP custody.

On July 12, 2011, shortly before his scheduled release date, the government certified him as a sexually dangerous person. (Certification, J.A. 13-14). At the hearing, the government presented the expert reports and testimony of Dr. Davis, Dr. Ross, and Dr. Plaud who each opined that Mr. Cox would have serious difficulty in refraining from child molestation if released. (Psychological Reports, J.A., 164-224). Mr. Cox presented documents showing he had serious health issues and had been cooperative while in custody that were largely unaccounted for by the experts. (BOP reports, J.A. 417-491).

The government presented the PSR as its exhibit 13 at the hearing. (PSR, J.A. 301). The PSR contained specific and detailed allegations about the content of child pornography that Mr. Cox possessed and other conduct he was alleged to have committed. (PSR, J.A 301-306). Additionally, charging documents related to dismissed and uncharged conduct were submitted. (Police Reports, J.A. 317-326) The government did not present independent evidence of these allegations.

Mr. Cox had never seen the PSR and had no opportunity to cross-examine any witnesses concerning the allegations in the PSR. (Deposition, J.A. 74).

At the hearing, Mr. Cox presented evidence of his deteriorating medical

condition and lack of disciplinary history of any kind while in BOP custody for the last 10 years. (BOP Reports, J.A. 365-495). The district court failed to discuss Mr. Cox's recent behavior and lack of sexual deviance while in BOP custody in its order. (Order, J.A. 538-557). The district court also failed to have any meaningful discussion about Mr. Cox's medical issues, despite significant evidence. (Order, J.A. 538-557).

In committing Mr. Cox, the experts and the district court relied heavily on the allegations in the PSR and charging documents. (Order, J.A. 538-557; Psychological Reports, J.A. 164-224). Indeed, these allegations provided the core of the experts and district court's finding that Mr. Cox would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

On October 17, 2012, the district court entered an order committing Mr. Cox. (Order, J.A. 557). On December 16, 2012, Mr. Cox timely appealed. (Notice of Appeal, J.A. 65-66).

## **SUMMARY OF ARGUMENT**

Mr. Cox raises two issues on appeal. First, that the district court committed plain error by finding that Mr. Cox would have serious difficulty refraining from child molestation if released. Second, the district court erred by relying on the

presentence report and other charging documents without giving Mr. Cox the opportunity to cross-examine witnesses about the factual accuracy of those reports.

The district court wholly failed to review countervailing evidence of Mr. Cox conduct while in BOP custody and his physical health. The court focused on Mr. Cox prior criminal conduct, but failed to consider his recent conduct in determining his volitional control. This omission by the court was plain error and affected Mr. Cox's substantial rights. Because the error was plain and would affect the fairness, integrity and public reputation of the proceedings, this court should vacate the commitment Order.

The district court and the experts relied heavily on the Presentence Report and charging documents when determining whether Mr. Cox should be committed. The district court and experts cite the presentence report as a basis for Mr. Cox conduct prior to his final arrest in 2003. Mr. Cox had no opportunity to test the veracity of the witnesses making the allegations in the Presentence Report or charging documents.

This Court should vacate the commitment Order.

## <u>STANDARD OF REVIEW</u>

This Court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). "A finding is 'clearly erroneous' when although there is evidence to support

it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation omitted). In addition, "Where a finding is not supported by evidence in the record, it is clearly erroneous." *United States ex rel. Paxos v. Rundle*, 491 F.2d 447, 452 (3rd Cir. 1972)(en banc). Further, a finding is clearly erroneous when a district court does not properly account for evidence contrary to that finding. *See Miller v. Mercy Hospital, Inc.*, 720 F.2d 356, 361 (4th Cir. 1983).

Mr. Cox did not object to the district court's reliance on the factual allegations in the PSR as true, but did object to their authenticity. Accordingly, this Court reviews his claim for plain error. *United States v. Baptiste*, 596 F.3d 214, 220 (4th Cir.2010). Under that standard, Mr. Cox must show that the district court erred, that the error was plain, that it affected his substantial rights, and that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.

## **ARGUMENT**

I. **THE DISTRICT JUDGE ERRED IN FINDING THAT MR. COX WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED**

Section 4248 requires the government to prove three things by clear and convincing evidence in order to commit a certified individual:(1) that the respondent has engaged or attempted to engage in sexually violent conduct or child

6

molestation; (2) that the respondent suffers from a serious mental illness, abnormality, or disorder, and (3) that as a result of the illness, abnormality, or disorder, the respondent would have serious difficulty refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4247(a)(5)-(6); *Hall*, 664 F.3d at 461.

Mr. Cox does not dispute that the government proved the first two factors by clear and convincing evidence. Mr. Cox argues that the district court clearly erred in finding that the government proved by clear and convincing evidence that Mr. Cox would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The "serious difficulty" analysis was codified after the Supreme Court's holding in *Kansas v. Crane*, 534 U.S. 407 (2002). The Supreme Court held in Crane that the government is Constitutionally forbidden from civilly committing an individual without a finding that the individual's mental illness causes the individual to lack volitional control over his actions. There must be more than a mere *de minimus* showing. The evidence, "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* at 413.

**A.** **The District Judge clearly erred by failing to consider relevant evidence directly related to volitional control.**

A finding is clearly erroneous when a district court does not properly account for evidence contrary to that finding. *Miller*, 720 F.2d at 361. Two recent cases from this Court help to clarify how this standard is applied in § 4248 cases. In *United States v. Wooden*, this Court vacated a district court order releasing Mr. Wooden because the district court did not account for "key parts of the record." 693 F.3d 440, 454 (4th Cir. 2012)(internal quotation omitted). In so doing, this Court described the evidence that the district court ignored as "compelling," "extensive," and "key." *Id.* at 453- 54. Further, the evidence for which the district court did not properly account in *Wooden* was not incidental to the government's case, but was instead central to it. *Id.* at 440, 453-44, 461-62. As such, the district court's opinion "cast[] doubt on the process by which the finding was reached, and hence on the correctness of the finding," mandating vacation of the district court order. *Id.* at 454 (internal quotation omitted).

*United States v. Caporale* clarified *Wooden*, noting that a district court does not commit reversible error when it neglects to address every "secondary point" raised at a hearing. 701 F.3d 128, 141 (4th Cir. 2012). It cautioned that such an approach would turn appellate review into searches for "No. 8 needles in a stack of alfalfa." *Id.* Instead, this Court in *Caporale* examined whether the district court's opinion focused on the *primary substance* of the hearing–the "battleground" on

which the parties actually litigated the case. *Id.*

*Wooden* and *Caporale* together stand for the sensible proposition that a district court commits reversible error when it does not account for significant evidence contrary to its opinion. The district court in this case ignored significant portions of the evidence and argument submitted by Mr. Cox.

In this case, the district court committed reversible error by finding that Mr. Cox would have serious difficulty in refraining from sexually violent conduct or child molestation. In making this finding, the district court did not address or acknowledge the central issues of Mr. Cox's case.

Specifically, the district court did not address in any substantive way Mr. Cox's unblemished record while in BOP custody since 2003 and severe medical issues hindering Mr. Cox. These issues were not secondary to Mr. Cox's case, but effectively constituted his entire argument against commitment. The district court had an obligation to acknowledge and address them.

Mr. Cox argues that his conduct while in custody over the last 10 years and his deteriorating physical condition would mitigate the concern of Mr. Cox having serious difficulty in refraining from sexually violent conduct or child molestation if released. This argument constituted the vast majority of his presentation through the exhibits and argument at the hearing. In fact, an argument that Mr. Cox would be sexually violent is seemingly not at issue in this case.

The issues focus more specifically on child molestation.

The record is full of support for the proposition Mr. Cox has the volitional control to resist further sexual offenses, especially contact offenses. First, Mr. Cox's flawless behavior while in BOP custody reflects his commitment to conforming his behavior to community norms. Second, Mr. Cox's medical condition is significant and would prevent further deviant conduct.

In contrast, this Court previously considered commitment for Clyde Hall who received excessive disciplinary reprimands while in BOP custody and after release, but was not committed. *See United States v. Hall*, 664 F.3d 456 (4th Cir. 2012). In 1989, Hall plead guilty for multiple contact offenses with a ten-year-old girl and was sentenced to four years in prison and 6 years supervised release. *Id.* at 459. In 1999, Hall plead guilty for a misdemeanor contact offense where the child's mother reported Hall giving and receiving oral sex with the ten-year-old. Upon his release from jail in 1999, Hall was arrested by federal authorities and was convicted in federal court for possession of child pornography. Id. at 460. Hall was sentenced to 63 months imprisonment and 3 years of supervised release. Id. Hall completed sex offender treatment and prepared a release prevention plan. Id. at 460. However, after failing multiple polygraph tests, "in February 2006, Hall's supervised release was revoked 'for violations of the program rules, inappropriate behavior with female clients, being defiant with staff, and failure to complete

chores at the community correction's placement.'" Id. at 460. In June 2006 Hall was released. Id. The Court noted that despite multiple failed polygraphs no evidence existed to prove Hall had committed any hands on offense since the 1999 convictions. Id. In January 2007, Hall viewed pornography, lost his job, failed to register as a sex offender, failed to report to probation, absconded from supervision and was revoked a second time. Id. He was sentenced to 25 months and 25 years of supervised release. Id. Prior to his release, Hall was transferred to Butner FCI for review as a sexually dangerous person. While in custody, Hall's acitivites were described as:

> Hall has been found in possession of sexually inappropriate materials at FCI Butner, including pictures of prepubescent children and traced drawings of prepubescent girls with their clothing removed and their genitals drawn. Hall also obtained or attempted to obtain inappropriate mail at FCI Butner, including publications from Jam Marketing, Glamour Girl Photos, High Caliber, Heavy Metal Magazine, Maxim Magazine and Teen Vogue. Hall has additionally been sanctioned at FCI Butner for various rules violations, including refusing to obey an order, being present in an unauthorized area, interfering with the taking of inmate count, and being insolent to a staff member.

Id. at 461.

The district court refused to commit Hall and this court affirmed after the government's appeal. Id.

The *Hall* court found that he had spent a significant amount of time in the community since his prior hands on offense. Additionally, the *Hall* court cited Dr. Rosell as saying, "recent research suggesting that hands-on offenders who possess such materials have a lower recidivism rate than those who do not collect such materials." *Id*.

Mr. Cox, in contrast to *Hall*, has a single hands on conviction, did not possess any contraband material while in custody, has complied with all rules and regulations of each facility he has been in, and has not exhibited ongoing sexually deviant behavior. Mr. Cox's last contact offense was in 1982. Also, Cox has spent more time in the community without a contact offense than Hall.

This information was not a "secondary point" to Mr. Cox's case. *Caproale*, 701 F.3d at 141. The district judge erred by not adequately addressing the core of Mr. Cox's case. After a 1-day hearing, and a 20-page Order, the entirety of the district court's factual discussion of Mr. Cox's BOP conduct and medical issues related to his volitional control is transcribed herein to:

> …Dr. Davis does credit Cox for cooperating with supervision while incarcerated. (Order, J.A. 554)
>
> The experts also examined possible protective factors that may decrease Cox's risk of sexual recidivism. These factors include (1) residing in the community without sexually offending for a significant period of time; (2) having less than fifteen years left in the offender's time at risk due

> to illness or physical conditions that significantly decrease the motivation and/or ability to sexually reoffend; and (3) the offender's advanced age. All of the experts agree that the protective factors do not significantly lessen Cox's sexual dangerousness. (Order, J.A. 556).

The court fails to discuss the medical records submitted on behalf of Mr. Cox from BOP. (BOP Reports, J.A. 417-491). No discussion regarding his significant work history while in custody. (Order, J.A. 538-557; BOP Reports, J.A. 365-416). No discussion of his lack of violent behavior. No discussion of his flawless disciplinary record while in custody. No mention of his complete absence of sexual misconduct while in custody. No medical records. No discussion of the repeated evaluations by BOP Psychological Services that no treatment is recommended. (BOP Reports, J.A. 308, 313). In fact, none of the specific evidence submitted by Mr. Cox in his 39 exhibits is even mentioned in the district court's order.

Additionally, the district court specifically states that, "[a]ll of the experts agree that the protective factors do not significantly lessen Cox's sexual dangerousness." (Order, J.A. 556). However, a review of Dr. Plaud's psychological evaluation shows the he does not consider protective factors. (Dr. Plaud Report, J.A. 224-240) Likewise, Dr. Davis states that "it is not clear" whether Mr. Cox's medical history would have a substantial impact on his time at risk. (Dr. Davis Report, J.A. 164-205). Finally, Dr. Ross spends a single

13

paragraph summarily dismissing the thought that any protective factor regarding Mr. Cox's failing health is relevant. (Dr. Ross Report, J.A. 222). The district judge wholly ignores these "battleground" issues while he focuses on the expert's assessments. The expert reports failed to provide any meaningful discussion regarding protective factors or Mr. Cox's medical condition. Specifically, Mr. Cox provided the court a multitude of medical documents as exhibits in the hearing, but the court did not address those documents at all in its opinion.

The impact of the current medical issues and recent behavior while in custody is the most recent and relevant the district court had to determine whether Mr. Cox has an impairment of his volitional control at this time. The factors the Court relied on were based almost wholly on conduct prior to 2003. More specifically, the last hands on offense by Mr. Cox occurred over 30 years ago. However, the district court failed to account for the salient evidence of volitional control.

Additionally, the district court failed to consider Mr. Cox's plan for release. The district court stated, "no evidence has been presented to show that Cox has developed a realistic plan for his release." (Order, J.A. 557). However, the court contradicts itself saying that Mr. Cox, "reported to Dr. Davis that he plans to open his own siding business and has requested placement in a halfway house because he presently has no suitable friends or relatives with whom to live if released."

14

(Order, J.A. 557). The court's conclusion is contrary to the evidence and ignores the fact that living at a halfway house would place greater restrictions on Mr. Cox than supervised release alone.

Under these circumstances, the district court's failure to acknowledge its initial views or explain why it disregarded the evidence of Cox's recent conduct while in custody and medical issues without any meaningful discussion casts real doubt on the propriety of the district court's determination that Cox lacks volitional control. *See United States v. Wooden*, 693 F.3d 440, 454 (4th Cir. 2012); *See also Taylor v. Maddox*, 366 F.3d 992, 1007–08 (9th Cir.2004) ("The process of explaining and reconciling seemingly inconsistent parts of the record lays bare the judicial thinking process, enabling a reviewing court to judge the rationality of the fact-finder's reasoning.... [F]ailure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding."). The district court should not simply rely on the blanket statements of the expert without accounting for countervailing evidence presented by Mr. Cox.

Mr. Cox admits that his prior crimes are relevant. However, when the question is whether an inmate suffering from pedophilia will have serious difficulty refraining from committing child molestation if released, more recent conduct is most relevant. Mr. Cox last contact offense occurred approximately 30

years ago. And in contrast to *Wooden*, Mr. Cox had no disciplinary infractions while in BOP custody since 2003. Mr. Cox also has significant medical issues that greatly reduce the risk of re-offense and are relevant to a consideration of volitional control. The district court's failure to take this evidence into account substantially undermines the court's determination that Cox lacks volitional control.

Therefore, the commitment order should be vacated.

## II. THE DISTRICT COURT PLAINLY ERRED IN RELYING ON THE FACTUAL ALLEGATIONS CONTAINED IN MR. COX'S PRESENTENCE REPORT AND CHARGING DOCUMENTS AS TRUE

The district court found that Mr. Cox would, in fact, have serious difficulty in refraining from child molestation if released. In reaching this conclusion, the district court relied heavily on the factual allegations in his 2003 Presentence Report ("PSR"), accepting them as true. These allegations were presented to the district court as direct evidence, through expert testimony and submission of the PSR in evidence. Mr. Cox did not have any opportunity to confront the witnesses who should have been called to present the evidence. Because accepting these un-confronted allegations as true violated Mr. Cox's right to cross-examine the witnesses against him, the district court plainly erred in committing him.

Mr. Cox objected to the admissibility of the PSR based on authenticity.

Mr. Cox adopts in relevant part the arguments of Michael Cox, Case No. 12-

6839, and his counsel at the Federal Defender's Office for the Eastern District of North Carolina currently on appeal before this Court. The arguments presented here appear to be addressed by Mr. Cox as a matter of first impression. Wherefore, the procedural posture of Mr. Cox is such that he cannot know the outcome of Mr. Cox's case and submits arguments similar to preserve these issues.

### A.    The district court committed plain error

"Because an adverse outcome in a commitment hearing results in a massive curtailment of a person's liberty, due process . . . affords respondents in such hearings several procedural protections. This is true even where the respondent is already a prisoner in custody of the state or federal government." *United States v. Baker*, 45 F.3d 837, 843 (4th Cir. 1995)(internal citations omitted). Relevant to this appeal, these procedural protections entail, at a minimum, "the right to confront and to cross-examine government witnesses at the hearing, except upon a showing of good cause." Id.

This right to cross-examination is at its greatest when the court needs "to uncover the truth by examining rigorously the reliability of conflicting evidence presented." *Id*. at 844. Unlike expert testimony, which typically does not involve the veracity of the witnesses, testimony from fact witnesses about past events requires cross-examination to help the court "uncover the truth." *Id*. at 844-45. Of course, the right to cross-examination is not simply a matter of form. In order to

satisfy the constitution, a court must afford individuals the right to an effective cross-examination of the witnesses against them. *United States v. Jordan*, 466 F.2d 99, 101 (4th Cir. 1972)(citing *Alford v. United States*, 282 U.S. 687 (1931); *Smith v. Illinois*, 390 U.S. 129 (1968)).

The right to confront witnesses against you applies broadly. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Neither of these exceptions applies in this case. The government made no attempt to show that the witnesses who could have provided direct evidence of the factual allegations in the PSR were unavailable. PSRs can contain otherwise inadmissible hearsay. *See, e.g., United States v. Felix*, 561 F.3d 1036, 1042 (9th Cir. 2009). Mr. Cox says that he had never seen his PSR when asked during his deposition. (Deposition, J.A. 74). Therefore, Mr. Cox was never able to cross-examine the witnesses making certain factual allegations against him to test their veracity. A PSR is not a document designed for admissibility at trial, and the district court clearly erred in accepting the unchallenged allegations in the PSR as true without any attempt to require the government to prove their veracity through cross-examination.

**B.    The admission of facts from the PSR affected substantial rights**

As the Supreme Court has noted, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." *Crawford*, 541 U.S. at 62.    Mr. Cox can demonstrate that the district court's error specifically changed the outcome in his proceeding.

Allowing a witness simply to parrot "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion" would provide an end run around *Crawford*. *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009).    Similarly, A review of the expert's opinions reflect that they relied heavily on the hearsay statements of the PSR and charging documents for which no conviction stemmed to make their ultimate determination regarding sexual dangerousness.    None of the witnesses who actually testified had actually observed the evidence underlying the allegations.

Dr. Davis clearly relied on nothing but hearsay statements to make his determination.    He notes that, the accuracy of the information contained in the evaluation is dependent upon the completeness and accuracy of the records provided." (Dr. Davis Report, J.A.  164). Dr. Ross contrasts the information given to her by Mr. Cox to that contained in the PSR.  (Dr. Ross Report, J.A. 206-223). Dr. Ross also notes "additional information" from probation reports.  (Dr. Ross

Report, J.A. 206-223). Dr. Plaud likewise relies heavily on the PSR and other documents. (Dr. Plaud Report, J.A. 224-240). While Mr. Cox confirms some information, but the heavy reliance on probation or other legal documentation to create an "accurate" portrayal of prior conduct reaches beyond the right to test the veracity of such statements.

Mr. Cox prior conduct was a significant factor in the district court's determination regarding volitional control. The court said specifically recounts Cox's sexual history in 5 pages of its Order and notes that, "Cox has a long history of sexual deviancy involving contact and non-contact offenses with pre-pubescent and pubescent girls." (Order, J.A. 556). The court also notes the, "frequency, severity and variety" as "extremely troubling." (Order, J.A. 556).

The court recounts specifically the underlying facts of Mr. Cox's prior offenses based on the expert's reports, PSR and complaint documents from uncharged or dismissed conduct. The court focuses intently on the expert's opinions that each relies heavily on the PSR and other documentation. (Order, J.A. 538-557).

The district court's plainly erroneous acceptance of the PSR and other charging documents caused it to accept un-confronted and disputed factual allegations as true. Its reliance on those allegations heavily influenced its decision to commit Mr. Cox when the evidence presented at the hearing actually provided

strong grounds for not committing him. Thus, the error affected Mr. Cox's substantial rights.

### C.   The error seriously affected the fairness, integrity, or public reputation of judicial proceedings

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Accordingly, we must guard against "substituting confinements for dangerousness for our present system which, with only narrow exceptions and aside from permissible confinements for mental illness, incarcerates only those who are proved beyond reasonable doubt to have violated a criminal law." *Id*. at 83.

By committing Mr. Cox based on impermissible hearsay, the district court deprived him of his liberty without the proper procedural protections. Because of the enormous value that our system places on individual liberty, this improper deprivation negatively affected the fairness, integrity, and public reputation of judicial proceedings. This Court should exercise its discretion to notice the error and vacate the commitment.

### CONCLUSION

Based on the forgoing, this Court should vacate Mr. Cox's commitment. Respectfully submitted, this the 17th day of June, 2013.

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Pursuant to Federal Rules of Appellate Procedure 34(a), Counsel for Appellant respectfully requests oral argument. Appellant believes oral argument will enable the Court to address questions concerning the nuances of this case, and assist with a more detailed understanding of the issues presented.

<u>s/ Bradley L. Henry, BPR # 025447</u>
Breeding, Lodato, & Lenihan, LLC
Attorney for Earl Webster Cox
117 Center Park Drive, Ste. 201
Knoxville, TN 37922
(865) 670-8535
brad@breedinglaw.com

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 12-8107          **Caption:** US v. Earl W. Cox

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

    [✓] this brief contains _____4,771_____ [*state the number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains _____ [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

    [✓] this brief has been prepared in a proportionally spaced typeface using
MS Word 2010 [*state name and version of word processing program*] in
Times New Roman, 14 point [*state font size and name of the type style*]; *or*

    [ ] this brief has been prepared in a monospaced typeface using
_____ [*state name and version of word processing program*]
with _____ [*state number of characters per inch and name of type style*].

(s) Bradley Henry

Attorney for Appellant

Dated: 06/17/2013

Rev. 03/03/11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

> G. Norman Acker, III, Assistant U. S. Attorney
> Michael Gordon James
> Rudolf A. Renfer, Jr., Assistant U. S. Attorney
> Seth Morgan Wood
> Office Of The United States Attorney
> Federal Building, Suite 800
> 310 New Bern Avenue
> Raleigh, NC 27601-1461

*/s/ Catherine B. Simpson*
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664

Filing and service were performed by direction of counsel